# GEORGE T. BOWEN *vs.* ANDREW TASCOE.

### *Malicious Prosecution—Probable Cause.*

In an action for malicious prosecution it is necessary for the plaintiff to prove that the defendant caused him to be prosecuted maliciously and without probable cause. Probable cause for a prosecution exists when there is such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty.

Plaintiff, a waiter in a club restaurant, was found carrying away in a clandestine manner, with the purpose of appropriating them, articles of food, the property of the defendant, who was the steward of the club. Defendant caused plaintiff to be arrested upon a charge of larceny, which was afterwards dismissed by the grand jury. In an action for malicious prosecution, *held*, that there was probable cause for the arrest and that the plaintiff was not entitled to recover.

Appeal from the Baltimore City Court (PHELPS, J.) The action was for malicious prosecution. The jury returned a verdict for the plaintiff for $250, and from the judgment thereon the defendant appealed.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER and BRISCOE, JJ.

*J. Alexander Preston* and *Alexander Preston* (with whom was *Robert Ludlow Preston* on the brief ), for the appellant.

*George M. Lane* and *D. D. Dickson*, for the appellee.

BRYAN, J., delivered the opinion of the Court:

In this action the appellee obtained a judgment against the appellant in a suit for malicious prosecution. Several instructions were given to the jury by the Court; but our attention will in the first instance be directed to a prayer of the defendant which the Court rejected. We will state it:

" The defendant prays the Court to instruct the jury that there is no evidence of malice or want of probable cause as against the defendant for the alleged malicious prosecution, and that therefore the plaintiff is not entitled to recover." It was necessary for the plaintiff to prove that the defendant had caused him to be prosecuted maliciously and without probable cause. If there was no probable cause for the prosecution it was competent for the jury to infer malice. The present inquiry may then be narrowed down to a consideration of the evidence which bears on the question of probable cause. If there was any proof tending to show that this did not exist, or which furnished a ground from which its non-existence might rationally be inferred, it was necessary to submit the question to the jury. If such evidence be found in the case, it is altogether unimportant to consider whether it is countervailed by proof of a contradictory character. Because, however positive and conclusive the contradiction may be, the decision of the matter in controversy falls within the province of the jury. They must weigh the conflicting testimony and render a decision upon it according to their own judgment.

Tascoe, the plaintiff, testified that he had been a waiter at the Merchants' Club in the city of Baltimore for six years, and had been a trusted servant. That one evening as he was leaving the club he was stopped by Major Hill, who was the managing director of the club, and was asked by him what he had in his pocket ; that he replied that he had some scraps which he was carrying home to feed his dog ; that upon examination it was found that he had part of a beefsteak which had been left by a customer and about a quarter of a pound of butter which was made up from what had been served to guests and had been left by them ; that he had always been accustomed to carry away scraps that were left by the guests, and that such scraps were usually thrown into the garbage; that he had never been told by any one that he should not take anything from the club house, and that it was the custom of waiters to take what

the guests left.  On cross-examination he testified that the butter he had in his pocket did not belong to him.  He also testified that he did not tell Major Hill that the package containing butter was soap; he said that he had soap in the same pocket which he had bought for his own use that day.  The plaintiff introduced other witnesses.  One of them, Siegel, testified that there was a general rule that no bundles were to be taken from the club, but this rule was not written and posted up in any place on the premises. On cross-examination he said that he had heard Tascoe named in regard to this rule, and had heard him told not to take any bundles away from the club.  Another of plaintiff's witnesses (Bland) testified that he was the head waiter of the club, and that Major Hill's orders were that no bundles should be taken from the club, and that he (Bland) had passed the orders down the line; he gave these orders to all the waiters, but did not do so collectively; the orders were not written and posted in any place on the premises; that all the food and supplies were bought and paid for by Bowen and sold and served to the guests as ordered. Bowen was the steward of the club.  On cross-examination he testified that he had warned Tascoe time and again not to take any bundles from the club; had said to him for God's sake stop carrying things away, that he would get himself into trouble if he did not stop; was called after Tascoe was stopped by Major Hill and shown the contents of the bundles, and thought the butter taken amounted to about a pound.  Tascoe was arrested on a charge of larceny made against him by Bowen, and was detained about two hours before he gave bail.  The charge was afterwards dismissed by the grand jury.

According to Tascoe's evidence he took property which he knew belonged to another person, and concealed it about his person for the purpose and with the intention of appropriating it to his own use.  The value of the thing taken was small; but we must consider the question of right. There is no possible construction of any portion of the tes-

timony which would entitle him to conceal and appropriate what he knew was not his own. And he does not strengthen his case by the witnesses whom he examined in support of his case. They state that he had been ordered not to take away bundles from the club. According to their testimony his conduct was not a mere inadvertence, but was a wilful and deliberate wrong. In *Boyd* v. *Cross*, 35 Md. 197, it was said that probable cause was " such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty." The averment here is that Bowen had not reasonable ground of suspicion of this description ; and the ruling of the Court below was, in effect, that there was evidence in the cause competent to show that it did not exist. In other words, that the jury were at liberty to find the arrest and prosecution of Tascoe were not warranted by circumstances which ought to have induced a cautious man to believe that he was guilty of larceny. When a man is found concealing the goods of another person and carrying them away with the avowed purpose of appropriating them to his own use it would be difficult to resist the belief that he was committing larceny. It cannot be denied that such circumstances point strongly to this conclusion. The excuse which Tascoe gave in his testimony was a feeble one, to-wit, that he had never been told that he should not take anything from the club house, and that it was the custom of the waiters to take what the guests left. And it does not appear in his testimony that he ever stated to Major Hill or to Bowen even this poor excuse. According to the testimony of his two witnesses who speak to this matter, it was entirely untrue. After a very careful examination of the testimony we have not found any fact or circumstance from which it could be rationally inferred that Bowen acted without reasonable cause to believe that Tascoe was guilty of larceny. As the case for the plaintiff breaks down because of the absence of this essential proof, it is unnecessary to pursue this subject any further.

Tascoe's own testimony would show him guilty of larceny in the view of the law; but it would show his offence to be a very trivial affair. We could not, of course, in deciding the question which we have been considering, take into view the contradictory evidence offered by the defendant. But it is a matter of justice to him that it should be known. Major Hill testified that Bowen had informed him that he was much embarrassed by the fact that food and materials belonging to him were carried away; that he gave notice to Tascoe time and again that he must stop taking bundles away; that on the occasion above mentioned he saw Tascoe leaving the club with his pocket full or sticking out; that he stopped him and asked him what he had in his pockets, and Tascoe said he had nothing but soap; that he made him open bundles which he had and found in one of them a part of a beefsteak which had been served to a guest and left; and in the other about a pound of butter, some of it looked as if it had not been served at all. Bowen testified in his own behalf. He stated that the amount of butter used at the Merchants' Club was sufficient to supply two houses of the same size; that he weighed the butter which was taken from Tascoe, and that it weighed exactly three-quarters of a pound; that he had been steward of the club for two years, and that he paid for all the food and butter consumed in the club; that the unused portions of butter were of value and use to him for various purposes; that he himself had been a waiter for thirty years, and during that time had never heard of butter being thrown into the garbage, and had never taken butter left over from any house, it was always kept; that he had caught Tascoe behind the counter flat on his stomach stealing oysters and eating them, previously to taking the butter and steak, and Tascoe then promised that he would never take any of his property again if he would not report him. He further testified that he had heard Bland, the head waiter, tell Tascoe a dozen times not to take bundles away. In rebuttal Tascoe denied that he had ever been caught by Bowen stealing oysters and that he had ever begged him not to report it.

It is not within our province to express an opinion on the weight of evidence, and we do not intend to do so. But when the question is properly presented, it is our duty to determine whether a plaintiff's case ought to be submitted to a jury.

*Reversed without a new trial.*